(57 South. 999.)

No. 18,701.

BOUDREAUX v. FIRST NAT. BANK OF JEANERETTE et al.

(Feb. 26, 1912. Rehearing Denied March 25, 1912.)

*(Syllabus by the Court.)*

APPEAL AND ERROR (§ 1011*) — REVIEW—
QUESTIONS OF FACT — CONFLICTING EVI-
DENCE.

Where the evidence is conflicting, the findings of the trial judge on issues of fact are entitled to great weight, and will not be disturbed unless clearly against the preponderance of the evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3983–3989; Dec. Dig. § 1011.*]

Appeal from Nineteenth Judicial District Court, Parish of Iberia; James Simon, Judge.

Action by E. A. Boudreaux against the First National Bank of Jeanerette and others. From a judgment for defendants, plaintiff appeals. Affirmed.

Foster, Milling, Brian & Saal, for appellant. Burke & Burke and V. J. Smith, for appellee First Nat. Bank of Jeanerette. Emmet Alpha, for appellee McGowen.

LAND, J. Plaintiff, a retail merchant of the village of Sorrel, parish of St. Mary, sued the First National Bank of Jeanerette, of the parish of Iberia, to recover $3,000 damages, alleged to have been occasioned by the wrongful protest, at the instance of defendant bank, of plaintiff's note for $104.50 executed in favor of the Fairbanks Company, and being one of a series of notes given for the credit portion of the purchase price of a gasoline engine. All of these notes were made payable on their face at the Bank of Jeanerette, Jeanerette, La. The petition alleges that the first note of the series was promptly paid; that petitioner deposited money in the Bank of Jeanerette to meet the note maturing on December 10, 1909, and instructed the cashier of that bank to pay the note when it was presented for payment; that the Fairbanks Company placed said note in the hands of the Hibernia Bank for collection, and that bank sent the note to the First National Bank of Jeanerette, with instructions to collect; that on December 10, 1909, said bank, instead of presenting the note at the place of payment, designated on its face, notified petitioner by telephone that the First National Bank held said note for collection; that petitioner informed the cashier of said bank that the note was payable at the Bank of Jeanerette, that the money was there deposited to pay said note, and that if the note was presented at the place of payment it would be paid; that the First National Bank disregarded the instructions of petitioner, refused to present the note to the Bank of Jeanerette, and without right or excuse protested the same, and returned it to New Orleans, notifying the holder thereof that payment had been refused.

Defendant excepted to the petition on the ground that it was not its duty to present the note for payment at the place indicated on the face thereof, but that such was the duty of the notary public to whom the note was handed for protest, and that, if any cause of action exists, it is against said officer. Reserving the benefit of this exception, the defendant, after pleading the general issue, admitted that on December 7, 1909, it held the note aforesaid for collection, and so informed the plaintiff by telephone, but averred that thereupon the plaintiff instructed the defendant to return the note, and, upon being informed that the note was subject to protest, plaintiff told the defendant to protest it.

Plaintiff filed an amended petition making the notary public a party to the suit, and charging that both defendants wrongfully and maliciously caused the note to be protested, and prayed for judgment against

them in solido for $3,000 damages. Later, the plaintiff again amended his petition, and prayed for judgment for $6,000 damages.

There was judgment in favor of the defendants, and the plaintiff has appealed.

The crux of the case is the issue of fact as to the instructions given by plaintiff to the defendant bank on December 7, 1909. The judge a quo decided this issue in favor of the defendants. The judge found that the cashier and collecting clerk of defendant bank called up plaintiff over the telephone, and, in reply, he instructed them to return the note, and, if subject to protest, to protest it, and that no other instructions were given. Plaintiff and appellant contends that this finding is contrary to the evidence. We have carefully examined the evidence on this issue and are not prepared to say that the judgment below is contrary to the evidence. It is certainly sustained by the direct and positive testimony of the collecting clerk and cashier of the defendant bank. The first note held by the Fairbanks Company was collected through the defendant bank, although payable on its face at the Bank of Jeanerette. The second note due December 7, 1909, was also sent to the defendant bank for collection. The collecting clerk testified from his records that timely notice was mailed to the plaintiff that the bank held the note for collection and that it would fall due on December 7, 1909.

Not hearing from the plaintiff, the bank on December 7, 1909, called him up over the 'phone, and he conversed with both the collecting clerk and the cashier about the note due on that day. The substance of their testimony as to what was said has already been stated. The gist of plaintiff's testimony is that he 'phoned the cashier that the note was payable at the Bank of Jeanerette, and that if he would present it to the Bank of Jeanerette it would be paid; that the cashier replied that the Bank of Jeanerette did not hold the note for collection, and, if it was not paid, it would be protested. Of course, the conflict between the statements of the two witnesses for the bank and the plaintiff cannot be reconciled. Plaintiff undertook to corroborate his testimony by the witnesses Dupan and Verret, who testified that they heard a conversation in plaintiff's store over the 'phone between the plaintiff and some other person. Dupan's version is as follows:

"I heard Mr. Boudreaux say through the 'phone to take the note to the Jeanerette Bank and it would be paid, and afterwards I heard him say, 'Don't protest my note;' instead of protesting the note to send it back to the place where it came from and they would send it back to the proper place and it would be paid."

On cross-examination, this witness admitted that he moved to Sorrel, where plaintiff's store was located not earlier than December 15, 1909, that he met plaintiff a few days later, and heard the conversation over the 'phone about 25 days more or less after he got there. Of course, this witness could not have heard the conversation of December 7, 1909. The witness Verret located the time of the 'phone conversation as between the 1st and 10th of December, 1909, and discredits himself at the start by stating that the witness Dupan was present. Verret's version is as follows:

"I don't want my note protested. Why don't you send it in the proper place for collection?"

That's all he heard. On cross-examination Verret said:

"I heard him say to send it back to the proper place where it came from, but I could not swear to it; it was something like that, but I did not pay much attention to it; but when I heard about the note's protest, I said to myself he must be in trouble. Q. But you heard him say to send it back to the proper place? A. Yes, sir; the proper place to be collected. Q. And you also heard him say to send it back to the place where it came from? A. Yes, sir. Q. You are sure that he used the language, 'Send it back where it came from,' whatever else you may have heard? A. Yes, sir. Q. You remember having heard him say that? A. Yes."

Such vague and inconsistent testimony is of little or no probative value. It is very probable that the cashier of the defendant bank would have presented the note to the Bank of Jeanerette if he had been instructed to do so, or had been advised that the plaintiff had made any provision there for its payment. It would have been much less trouble to collect from a bank in the same town than from the plaintiff several miles away. The cashier had no motive to protest the note save as a matter of business duty.

It appears that the plaintiff had been fretted at the insistence of the defendant bank in the prompt collection of the first note, and had made a verbal arrangement with the cashier of the Bank of Jeanerette for the payment of the note due December 7, 1909. Plaintiff did not deposit money to meet the note as alleged in his petition, and as a matter of fact his account was overdrawn. The note, however, would have been paid, if it had been presented to the Jeanerette Bank on December 7, 1909. If plaintiff had intended to pay the note on December 7, 1909, he would have instructed the defendant bank to present the note for payment to the Bank of Jeanerette. This would have ended the matter, and there would have been no occasion for any talk about protest, or returning the note to the holder. On December 8, 1909, the next day after the protest, the plaintiff wrote the Fairbanks Company, omitting caption, as follows:

"When I signed those notes for that engine which I bought through Mr. W. F. Taylor, he told me all the notes would bear the same interest as the first one.

"I am notified from the First National Bank of Jeanerette that the interest is over $5.00. I do not see why you should charge me more interest than on the first note, as each note should bear its own interest.

"All those notes are made payable through the Bank of Jeanerette, and I will ask you to send them there for collection," etc.

The note due December 7, 1909, was paid on January 14, 1910, less protest fees and interest after maturity. It would seem, from the letter quoted above, that the plaintiff objected to the interest charge on the note, and objected to paying the note unless sent to the Bank of Jeanerette. These objections are circumstances that increase the improbability that plaintiff instructed the cashier of defendant bank to present the note for payment to the Bank of Jeanerette, and that the cashier refused to do so without any reasonable motive.

Judgment affirmed.